UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:

Unity Holdings, LLC,                          Case No. 21-20537-GMH
Debtor in possession.                         Chapter 11, Subchapter V

---

## PLAN OF REORGANIZATION, DATED MAY 3, 2021

---

This Plan of Reorganization (the "Plan") for Unity Holdings, LLC (the "Debtor") is being proposed by the Debtor in Possession.

On February 2, 2021, the Debtor in this case filed for relied under 11 U.S.C. Chapter 11. Pursuant to the presumption allowed under 11 U.S.C. §§ 1107 and 1108, the Debtor has continued the possession of its property, and has continued to operate its business. The Debtor retained Steinhilber Swanson as attorneys for the Debtor and Debtor in Possession, and that appointment was approved by the Court.

The Debtor's Schedules of assets and liabilities, Statement of Financial Affairs, and Statement of Executory Contracts were filed with the Court. The meeting of creditors was held at which time an officer of the Debtor was questioned by the creditors, creditors' representatives, the SubChapter V Trustee, and the Attorney for the United States Trustee. Creditors are referred to the Debtor's Statements and Schedules on file in these proceedings for the purpose of becoming fully informed as to the assets, liabilities and financial affairs of the Debtor as of the date of the filing.

The Debtor provides this Plan to all its known creditors in order to disclose the information deemed by the Debtor to be material, important and necessary for its creditors to arrive at a reasonably informed decision in exercising the right to vote for acceptance of the Plan. All creditors will be forwarded a copy of the Plan and a Ballot to be completed by the creditor. The creditors will also be provided notice of the Hearing on Confirmation of the Plan. Creditors may attend this hearing. In addition, creditors may vote on the Plan by filling out the Ballot provided and mailing the Ballot to the Debtor's counsel. **As a creditor, your acceptance is important. For the Plan to be deemed accepted, creditors voting that hold at least two thirds in amount and more than one half in number of the allowed claims of the various classes must vote for the Plan. The holders of two thirds in amount of equity security interests must vote for the Plan.** In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class rejecting it and otherwise meets the requirements of §1191 of the Code.

For a Plan to be "fair and equitable" with respect to a class of unsecured creditors, it must comply with §1191(c) of the Code. That section requires that, beginning with the most senior rank of claims of creditors against the Debtor, each class in descending rank of priority must receive full and complete compensation before inferior or junior classes may participate in the distribution. In order for a Plan to be fair and equitable with respect to secured creditors, it must provide that the secured creditor will retain its lien and will

receive deferred cash payments totaling at least the allowed amount of the secured claim, of a value, as of the effective date of the Plan of at least the value of the creditor's interest in the bankruptcy estate's interest in the collateral.  As an alternative, the Plan may comply with the fair and equitable requirement for secured creditors by providing for the sale of collateral free and clear of liens with liens to attach to the sale proceeds.  Finally, the Plan may provide for the surrender of collateral to the secured creditor in satisfaction of the allowed secured claim. Additionally, as of the Effective Date of the Plan, the Plan must either provide that all of the projected disposal income of the Debtor to be received in the three year period, or such longer period not to exceed five years, as the Court may fix, beginning on the date that the first payment is due under the Plan will be applied to make payments under the Plan; or that the value of property to be distributed under the Plan in the three year period or such a longer period not to exceed five years as the Court may fix, beginning on the date on which the first distribution is due under the Plan is not less than the projected disposable income of the Debtor.  Additionally, the Plan must be feasible.

In order to fully understand how a Plan is confirmed, each individual creditor should check with their own attorney and receive full advice on the applicable rules.

**Background for Cases Filed Under Subchapter V**

### A. Description and History of the Debtor's Business

The Debtor is a limited liability company with Paul Krause as the sole member.  Since 2002, the Debtor has owned and operated a commercial real

3

estate building located at 4158 Main Street in Fish Creek, Wisconsin. The Debtor incurred expenses attempting to change the use of the building and subsequently fell behind on mortgage payments. At the time the expenses were incurred, the Debtor anticipated refinancing the mortgage Note with the current mortgage Note holder, DH Portfolio, LLC, who purchased the Note form Nicolet Bank. Ultimately, DH Portfolio, LLC declined to refinance the mortgage Note and a foreclosure action was commenced. On February 1, 2021, the Debtor acquired the assets of the retail women's clothing business, Trail's End. Trail's End was a sole proprietorship operated since 2014 by Marcella Krause, the spouse of Paul Krause.

Trail's End primarily caters to visitors to Door County in the months of April through October. While inventory is bought throughout the year, most inventory is ordered in April and May with significantly less inventory being purchased beginning in July. The visitor season for Trail's End usually begins in April or May, while the summer months see the most visitors and strongest sales. The business ultimately slows down for the season around the third week of October. Trail's End offers mid-range women's apparel and accessories, small decorative homegoods, lotions and essential oils. The apparel is focused on seasonal items like spring and summer blouses, shorts, leggings, pants, sweaters, jackets and dresses. The accessories sold are hats, belts, hoisery and costume jewelry. The small home goods inventory includes candles, candleholders, vases and plaques.

The Debtor will fund the plan from the cash flow of operating the retail clothing store, Trail's End. In addition, the plan will be further funded by rent of $1,250.00 per month from Paul David Jewelers, a tenant of 4158 Main Street, Fish Creek, Wisconsin, and a sole proprietorship operated by Paul Krause since 1996.

**B.    Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. §1190 reveals that upon liquidation, all claims would be paid in full. The Debtor asserts that the LLC assets have values as follows:

| | |
|---|---|
| Real Estate | $850,000.00 |
| Inventory | $ 50,000.00 |
| Total: | $900,000.00 |

Total Claims Scheduled or claimed are approximately $575,000.00.

**C.    Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business, and the Plan must provide projections that support the Debtor's ability to make all payments required by the Plan. See 11 U.S.C. §1190.

5

The Plan Proponent has provided projected financial information as Exhibit 1.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) sufficient to pay all claims in full.

The final payment is expected to be paid 60 months from the Effective Date.

Annual operating income from Trail's End is forecasted to remain steady at $53,410.00 based on 2020 actual sales. Rental income from Paul David Jewelers is estimated at $15,000.00 annually.

Please see the attached assumptions as to revenue and expenses.

## ARTICLE 1: SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Unity Holdings, LLC (the "Debtor") from cash flow of operations of the retail business Trail's End and from rents paid by Paul David Jewelers.

This Plan provides for:

| [  0  ] | classes of priority claims; |
|---|---|
| [  3  ] | classes of secured claims; |
| [  1  ] | classes of non-priority unsecured claims; and |
| [  1  ] | classes of equity security holders. |

6

**Payment of non-priority unsecured claims.** Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar.

**Payment of administrative expenses and priority claims:** This Plan provides for full payment of administrative expenses and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

*Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)*

### ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01: Class 1**. All allowed claims entitled to priority under § 507(a) of the Code (except administrative expenses under § 507(a)(2) and priority tax claims under § 507(a)(8)).

**2.02: Class 2**. **A. DH Portfolio, LLC.** The fully secured claim in the amount of $505,676.00 is collateralized by the real estate at 4158 Main Street in Fish Creek, Wisconsin owned by the Debtor, as well as a commercial condominium unit located in Sister Bay Wisconsin. The real estate at 4158 Main Street in Fish Creek, Wisconsin has an estimated value of $850,000.00. It also holds as additional collateral, a first mortgage in a commercial condominium in Sister Bay, Wisconsin owned by Paul and Marcella Krause, valued at $40,000.00. Due to the seasonality of the Debtor's business, in which income is earned from June to October each year during the tourist season in

7

Door County, the Debtor will make an annual payment on this claim on November 15 each year.

**2.03: Class 2. B. Door County Treasurer.** The secured claim in the amount of $27,274.00 is based on past due real estate taxes on the real estate at 4158 Main Street in Fish Creek, Wisconsin.

**2.04: Class 2. B. Small Business Administration.** The claim of the SBA arises out of an SBA EIDL loan in the amount of $33,000.00 secured by the Debtor's inventory and fixtures, originally taken out by the proprietor, but assumed by the Debtor upon the transfer of the retail clothing business to the Debtor.

**2.05: Class 3.** All non-priority unsecured claims allowed under § 502 of the Code. These claims total $4,250.00.

**2.06: Class 4.** Equity interests of the Debtor. Paul Krause shall retain his equity interest as the sole Member of the Debtor.

### ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

**3.01: Unclassified claims.** Under section § 1123(a)(1), allowed administrative expenses and priority tax claims are not classified. There are no such claims in this case.

**3.02: Administrative expenses.** Administrative expenses for the fees of the SubChapter V trustee and the Debtor's Attorney as allowed under § 503 of the Code will be paid with in twenty (20) months of their approval by the Court. Administrative expenses are expected to be no more than $15,000.00.by the holder of the claim and the Debtor.

8

**3.03: Priority tax claims.** There are no such claims.

**3.04: Statutory fees.** All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan will be paid on or before the effective date.

**3.05: Prospective quarterly fees.** All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01: Claims and interests are treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – **Priority claims** excluding those in Article 3 | ☐ Impaired<br><br>☐ Unimpaired | There are no such claims. |

9

| | | |
|---|---|---|
| Class 2A – **Secured claim** of DH Portfolio, LLC | ☒ Impaired<br><br>☐ Unimpaired | The Debtor will pay interest only pursuant to the filed claim amount of $505,675.05, at the rate of 4.25% earned from April 5, 2021(the claim filing date) to November 15, 2021, in the amount of $13,189.00. Starting November 15th of 2022, the remaining balance will be amortized over 25 years at the rate of 4.25% and call for annual payments of $33,230.00 payable on November 15th of each year, providing the entire balance of the claim plus accrued interest due and payable 60 months from the Effective Date of the Plan. The mortgage, currently reduced to a judgment of foreclosure, shall be upon confirmation reinstated to terms, subject to the provisions of this Plan, and any guarantees by Paul and Marcella Krause shall be reaffirmed and reset, also to terms. Any State Court action shall be dismissed as to the Debtor or guarantors, without prejudice. See specifically Article 10 section 1, hereunder, with regard to the guarantee. |
| Class 2B – **Secured claim** of Door County Treasurer | ☒ Impaired<br><br>☐ Unimpaired | This claim will be repaid in two installments including interest as the rate of 12% as follows: The first installment shall be made on December 1, 2021 in the amount of $17,420.00 and the second installment shall be made on December 1, 2022 in the amount of $14,702.00 for a total of $32,122.00. |

| Class 2B – **Secured claim** of Small Business Administration (EIDL) | ☐ Impaired<br>☒ Unimpaired | This claim will be paid to terms, unmodified, having been assumed by the Debtor as follows: $161.00 per month beginning in Year 2 and to continue thereafter for 360 months. |
|---|---|---|
| Class 3– **Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | Unsecured creditors will receive annual payments on November 30th of each year over the five (5) years of the plan in the amount of $960.00 without interest. |
| Class 4– **Equity security holders of the Debtor** | ☒ Impaired<br>☐ Unimpaired | Paul Krause shall retain his equity interest as the sole Member of the Debtor. |

**ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**5.01: Disputed claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either:

(i) A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02: Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.03: Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

11

**ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a)   The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date of the Plan:

Month to month lease with Paul David Jewelers at 4158 Main Street in Fish Creek, Wisconsin for the use of a portion of the building for retail sales.

(b)   Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, either before the effective date or under section 6(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date on which the court enters the order confirming this Plan.

**ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN**

**7.01: Overview of Plan Implementation.** The Plan will be implemented by the Debtor continuing its operations and devoting its future income to the Plan.  It is required to pay its debts as restructured hereunder.  Attached hereto are projections which the Debtor believes are reasonable and attainable under the circumstances which are based on actual performance and careful analysis of current cost of goods sold. Key assumptions are attached hereto.

12

**7.02: Revenue Assumptions.** Retail sales form the retail clothing store, Trail's End, are forecasted based on actual sales in 2020, which the Debtor believes are a conservative projection of future sales, given the COVID-19 pandemic disruption to the local economy. It is assumed that sales will remain steady each year of the forecast, however, Debtor believes that it is likely sales will increase as people start travelling and vacationing post-pandemic.

Historically the costs of goods sold by the Trail's End has averaged 26.25% of sales and the Debtor believes that this will remain constant through the forecast. The following disbursements are forecasted as a percentage of receipts based on prior year's history: merchant fees averages 2.24% of retail sale; shipping averages 0.26% of retail sales; supplies averages 1.56% of retail sales. All other disbursements were forecasted based on prior years history and are assumed to remain constant each year of the forecast.

Rent is based on $1,250.00 per month to be paid by Paul David Jewelers, which currently occupies a portion of the building located at 4158 Main Street in Fish Creek, Wisconsin. Based on his past contributions, and similar assumptions as to the post-pandemic period, he has high confidence and near certainty that he will make this payment.

It is assumed that the Principal Owner and Member will likely take no personal draws from the Debtor for living expenses in the first two years of the forecast to provide cash flow to pay the past due real estate taxes. In year three (3) and thereafter, the Member may draw $16,000.00 annually for personal living expenses. In the event the Debtor exceeds net revenue

13

projections, and all payments are current, then it reserves the right to have the Member draw a reasonable amount as available.

**7.03: Administrative Expenses Assumptions.** Administrative Expenses associated with Legal and Financial Costs in developing the Plan of Reorganization totaling approximately $15,000.00. It is assumed that these expenses will be paid within twenty (20) months of their approval by the Court. This includes the Attorney for the Debtor and Chapter 11 SubChapter V Trustee fees, all as allowed by the Court.

**ARTICLE 8: GENERAL PROVISIONS**

**8.01: Definitions and rules of construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**8.02: Effective date.** The effective date of this Plan is the day that is 30 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

**8.03: Binding effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.04: Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

14

**8.05: Corporate governance.** The Debtor is a single member LLC and shall be governed under that business form.

**8.06: Retention of Jurisdiction.** The court confirming the Plan may exercise jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

## ARTICLE 9: DISCHARGE

**9.01: Discharge.** The Debtor is not seeking a discharge and is paying all allowed claims in full.

## ARTICLE 10: OTHER PROVISIONS

**10.01: Injunction as to the Class 2.A. Claimant.** Confirmation of the Plan shall reinstate the loan and mortgage to the Class 2.A. claimant, and any guarantee by the Member or his spouse shall be, in effect, reset and remain in full force and effect during the term of the obligation, and any claim against the guarantor in litigation shall be dismissed without predjudice. The Class 2.A. claimant may subsequently enforce such reinstated guarantee only upon default, post confirmation, by the Debtor on the obligation as modified by this plan. The Claim 2.A. claimant has commenced an action on the guarantee not withstanding this Plan in Door County Circuit Court. A judgment against the guarantor will serve to make compliance with the terms of this Plan difficult if

15

not impossible.  In light of the value of the underlying collateral, and likelihood of full repayment, this injunction is essential to the success of the Plan.

The bankruptcy court has the authority to enjoin conduct that interferes with the administration of the bankruptcy case pursuant to §105 and <u>Caesers Ent. Operating Co., Inc. v. BOKF, N.A.</u> 808 F. 3d 1186, 1189-89 (7th Cir. 2015).

There are two exceptions to the general rule that the stay does not bar actions against a debtor's guarantors. <u>In re Fernstrom Storage and Van Co.,</u> 938 F.2d 731,736 (7th Cir. 1991).  Applicable to this case:

The first is applicable where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." <u>*A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999</u> (4th Cir.), *cert. denied*, <u>479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct. 251 (1986)</u>. The second operates where the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate, or the reorganization plan "irreparable harm." *In re Lomas Fin.*, 117 Bankr. 64, 67 (S.D.N.Y. 1990), *remanded*, <u>932 F.2d 147 (2d Cir. 1991)</u>. *See also  In re North Star Contracting Corp.*, 125 Bankr. 368, 370 (S.D.N.Y. 1991).

**10.02: General Release and Injunction.** Except as otherwise provided in this Plan, the distributions and rights afforded in the Plan shall be in complete and full satisfaction, effective as of the Effective Date, of all claims of any nature whatsoever against the Debtor, the Estate, or the Reorganized Debtor.

16

Commencing on the Effective Date, except as expressly provided otherwise in this Plan, the holders of all claims shall be enjoined from asserting against the Debtor, (or its principal, Paul Krause or Paul and Marcella Krause, as guarantors, so long as the reorganized Debtor is current on all payments under the Plan), or its assets and properties, any other or further liabilities, liens, obligations or claims, including, but not limited to, all principal and accrued and unpaid interest on the debts of the Debtor, based on any act or omission, transaction, or other activity or security interest, or other agreement of any kind or nature of agreement occurring, arising or existing prior to the Confirmation Date that was or could have been subject of any claim, whether or not allowed. All legal or other proceedings or actions seeking to establish or enforce liabilities, liens, claims, or obligations of any nature against the Debtor or assets or properties received or retained by the Reorganized Debtor with respect to debt and obligations, if any, of the estate, arising before the Confirmation Date, or against Paul and Marcella Krause, for so long as the Reorganized Debtor is current on payments under the Confirmed Plan, shall be stayed and enjoined, except as otherwise specifically provided for in this Plan.

**10.03: Extinguishment of Liens.** Except as otherwise provided by this Plan, all liens on property of the Debtor or the Estate shall be extinguished on the Confirmation Date.

**10.04: Injunction Upon Confirmation.** Except as provided for herein, after the Confirmation Date, holders of claims against the Debtor or its assets shall be enjoined from:

17

A. Commencing or continuing any action or proceeding or employing process against the Debtor or purchaser of the Debtor's asset in an attempt to obtain or realize a partial or full satisfaction of any claim;

B. Enforcing or seeking to enforce any such claim or taking any steps which would lead to the enforcement of any such claim against the Debtor, a purchaser of the Debtor's assets, or the property of either of them;

C. Seeking to set off or recoup any such claim against any pre-petition or post-petition obligations owed to the Debtor or a purchaser of the Debtor's assets;

D. Seeking to create, perfect or enforce any lien against property of the Debtor or a purchaser of the Debtor's assets; and

E. All other acts against the Debtor or a purchaser of the Debtor's assets or the property of either of them, including, but not limited to, those acts described in §362(a) of the Code.

F. All of the above acts by parties holding guarantees from the principal owner against the Guarantors, Paul and Marcella Krause, so long as the Reorganized Debtor is current with all payments due under the confirmed Plan.

**10.05: Enforcement of the Plan.** Notwithstanding Section 10.03, after the Confirmation Date, the holder of an allowed claim shall be allowed to take any steps necessary to enforce this Plan against the Debtor or the assets of the

18

Debtor, but all pursuant to the terms of the Confirmed Plan, which shall bind such creditors.

**10.06: Modification of the Plan.** The Debtor may propose amendments or modifications of this Plan, at any time prior to the confirmation order with leave of the Bankruptcy Court, upon notice to those parties designated by the Bankruptcy Court. After the confirmation order, the Debtor may, with the approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the confirmation order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

**10.07: Final Decree, Closing and Reopening of the Case.** Upon substantial consummation of the Plan, which for purposes of this section shall be when the Debtor commences payments to any claimant under this Plan as confirmed, the Debtor may apply for a Final Decree and an order closing the case, and if appropriate, pursuant to § 350(a) of the Code, the Court shall close the case. Subsequent to any such Order closing the case, the case may be reopened pursuant to § 350(b) to administer assets or to grant the Debtor other relief as may be appropriate.

**10.08: Retention of Jurisdiction By The Court.**
After the Confirmation Date, and until this Plan has been fully consummated, the Court may retain jurisdiction for all appropriate purposes, including, but not limited to, the following:

19

A. To consider any modification to this Plan pursuant to sec. 1193(b) or (c), or to correct any defect, cure any omission, or reconcile any inconsistency of this Plan or in the Confirmation Order, to the extent necessary to carry out the purposes and intent of this Plan;

B. To hear and determine any objections to the allowance of claims and requests for estimation of claims;

C. To hear and determine any Applications, Adversary Proceedings, Motions, and other contested matters not resolved in this Plan;

D. To hear any and all Applications for Compensation of Professional Services and Disbursements and any other and similar fees incurred prior to the Confirmation Date;

E. To enforce the terms and provisions of payments, rights and interests acquired or created by this Plan, or by earlier Orders of the Court.

F. To enter any Order necessary to consummate, interpret, and effect the provisions of this Plan and the Confirmation Order, or as may otherwise be required by the Code.


Respectfully submitted,


/s/    *Paul G. Swanson*
Paul G. Swanson
Counsel for the Debtor

20

# Unity Holdings LLC

### Exhibit I
### Liquidation Analysis

|                                         | Amount    |
|-----------------------------------------|-----------|
| **ASSETS**                              |           |
| **Current Assets**                      |           |
| **Checking/Savings**                    |           |
| **Cash on Hand**                        | 100       |
| **Total Checking/Savings**              | 100       |
| **Other Current Assets**                |           |
| **Inventory**                           | 35,000    |
| **Total Other Current Assets**          | 35,000    |
| **Total Current Assets**                | 35,100    |
| **Property and Equipment**              |           |
| **Furniture and fixtures**              | 15,000    |
| **Real Estate**                         | 850,000   |
|                                         | 865,000   |
|                                         |           |
| **TOTAL ASSETS**                        | **900,100** |

| Exemptions                              |           |
|-----------------------------------------|-----------|
| Debtor's exemption                      | 0         |
| Business Exemption                      | 0         |
| Total Exemptions                        | -         |

| Value of assets after exemptions        | 900,100   |
|-----------------------------------------|-----------|

| Estimated cost to liquidate assets              |           |
|-------------------------------------------------|-----------|
| Cost to Liquidate Real Estate @8% of value      | 68,000    |
| Cost to liquidate FFE @25% of Value             | 3,750     |
| Cost to liquidate Inventory @25% of Value       | 8,750     |
| Total Estimated cost to liquidate assets        | 80,500    |

| Value of assets after liquidation costs | 819,600   |
|-----------------------------------------|-----------|

| Other Fees from Liquidation Proceeds                      |           |
|-----------------------------------------------------------|-----------|
| Trustee Fees                                              |           |
| 25.00% First $5,000                                       | 1,250     |
| 10.00% Next $45,000                                       | 4,500     |
| 5.00% Over $50,000 but less than $1,000,001               | 38,480    |
| 3.00% Over $1,000,000                                     | -         |
| Total Trustee Fees                                        | 44,230    |
| Administrative Fees                                       | 15,000    |
| Federal Income Tax on sale of assets                      | 184,936   |
| State Income Tax on sale of assets                        | 19,129    |
| Total Other Fees from Liquidation Proceeds                | 263,295   |

| | |
|---|---:|
| Net funds available to creditors | 556,305 |
| | |
| **Priority Creditors** | |
| Door County Treasurer | 27,274 |
| Total Priority Claims | 27,274 |
| | |
| **Secured Creditors** | |
| DH Portfolio LLC | 505,676 |
| SBA | 33,000 |
| Total Secured Creditors | 538,676 |
| | |
| Net Funds Available after Secured Creditor Claims | (9,645) |
| | |
| Total Unsecured Creditor Claims | 4,250 |
| Discharged Amount of Unsecured Claims | 4,250 * |

\* No amount is sought to be discharged. Class 2(A)
has other, non-Debtor, collateral and as such, all claims
will be paid in full and this liquidation analysis is
inapplicable.

# Unity Holdings LLC
Exhibit II
Forecasted Statement of Cash Flow

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| **Revenue** | | | | | |
| Retail Sales | 95,000 | 95,000 | 95,000 | 95,000 | 95,000 |
| Rent | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
|  | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 |
| **Cost of Sales** | | | | | |
| Purchases | 24,930 | 24,930 | 24,930 | 24,930 | 24,930 |
| **Gross Profit** | 85,070 | 85,070 | 85,070 | 85,070 | 85,070 |
| **Operating Expenses** | | | | | |
| Insurance | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Merchant Fees | 2,130 | 2,130 | 2,130 | 2,130 | 2,130 |
| Professional Fees | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Property Taxes | 7,880 | 7,880 | 7,880 | 7,880 | 7,880 |
| Repairs | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Storage | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Shipping | 250 | 260 | 260 | 260 | 260 |
| Supplies | 1,480 | 1,480 | 1,480 | 1,480 | 1,480 |
| Taxes and Licenses | 120 | 120 | 120 | 120 | 120 |
| Utilities | 11,800 | 11,800 | 11,800 | 11,800 | 11,800 |
| Total Operating Expenses | 31,660 | 31,670 | 31,670 | 31,670 | 31,670 |
| Operating Income | 53,410 | 53,400 | 53,400 | 53,400 | 53,400 |
| **Other Disbursements** | | | | | |
| Administrative Fees | 15,000 | - | - | - | - |
| DH Portfolio LLC | 13,189 | 33,230 | 33,230 | 33,230 | 33,230 |
| SBA | - | 1,932 | 1,932 | 1,932 | 1,932 |
| Door County Treasurer | 17,420 | 14,702 | - | - | - |
| Unsecured Claims | 960 | 960 | 960 | 960 | 960 |
| Owner Draws | - | - | 16,000 | 16,000 | 16,000 |
| Total Other Disbursements | 46,569 | 50,824 | 52,122 | 52,122 | 52,122 |
| Net Increase (Decrease) in Cash | 6,841 | 2,576 | 1,278 | 1,278 | 1,278 |
| Beginning Cash | - | 6,841 | 9,417 | 10,694 | 11,972 |
| Ending Cash | 6,841 | 9,417 | 10,694 | 11,972 | 13,250 |

**Unity Holdings LLC**

Exhibit III

Secured Claims

| Claimant | Amount | Interest | Amort | Interest Only | Annual P&I |
|----------|--------|----------|-------|---------------|------------|
| **DH Portfolio LLC** | $ 505,676.05 | 4.25% | 25 | $ 13,189 | $ 33,230 |
| SBA (pmt begins Year 2) | $ 33,000.00 | | 360 | | $ 161 |

**Unity Holdings LLC**
Exhibit IV
Priority Claims

| Claimant | Amount | Interest |
|---|---|---|
| **Door County Treasurer** | $ 27,274.17 | 12.00% |

**<u>Payment Schedule</u>**

| Date | D/O/S | Pmt Amount | Interest | Principal | Balance Due |
|---|---|---|---|---|---|
| 12/01/21 | 365 | $ 17,420 | $ 3,273 | $ 14,147 | $ 13,127.17 |
| 12/01/22 | 365 | $ 14,702 | $ 1,575 | $ 13,127 | $ - |
| 12/01/23 | 365 | $ - | $ - | $ - | $ - |
| 12/01/24 | 366 | $ - | $ - | $ - | $ - |
| | | $ 32,122 | $ 4,848 | $ 27,274 | |

Unity Holdings LLC (the Debtor)
Financial Assumptions for Plan of Reorganization

The forecasted cash flows are for a five year period.

The Debtor owns a commercial building in Door County Wisconsin in which it operates a retail small clothing store and leases space used by related business.

**Revenue Assumption:**

Retail sales from the clothing store are forecasted based on 2020's actual sales which the Debtor believes is indicative of future sales give the COVID 19 disruption in the local economy. It is assumed that sales will remain steady each year of the forecast.

Rent is based on $1,250 per month to be paid by the related business which currently occupies a portion of the building.

**Cost of Goods Sold Assumption:**

Historically the cost of products sold by the clothing store has average 26.25% of sales and the Debtor believes that this will remain constant through out the forecast.

**Operating Expense Assumptions:**

The following disbursements are forecasted as a % of Receipts based on prior year's history;

Merchant Fees averages 2.24% of Retail Sales.
Shipping averages 0.26% of Retail Sales.
Supplies averages 1.56% of Retail Sales.

All other disbursements were forecasted based on prior years history and are assumed to remain constant each year of the forecast.

**Other Disbursements:**

Personal living expense:

It is assumed that the Debtor will take no draws for personal living in the first two years of the forecast to provide cash flow to pay the past due property taxes. In year 3 and thereafter the Debtor will draw $16,000 annually for the personal living expenses of its principals.

Payment of Administrative Expenses:

Legal fees are forecasted to be $15,000. It is assumed that these expenses will be paid within twenty months of their approval by the Court.

Payments to Creditors:

**Secured Claims:**

DH Portfolio LLC; The claim in the amount of $505,676 is collateralized by the real estate owned by the Debtor and is assumed to be fully secured.

Due to the seasonality of the Debtor's business in which income is earned from June to October each year (the tourist season in Door County) the Debtor will make an annual payment on this claim on November 15th each year. The payment terms are as follows;

> In the first year the Debtor will pay interest only in the amount of $13,189 based on interest at the rate of 4.25% earned from April 5, 2021 (filing date of claim) to November 15th 2021.

> Thereafter, the Debtor will make an annual payment of $33,230 including principal and interest based on a 25 year amortization and an interest rate of 4.25%. The loan will mature on November 15th 2028.

Small Business Administration; The claim in the amount of $33,000 is collateralized by the inventory and fixtures owned by the Debtor and is assumed to be fully secured.

The Debtor will pay the claim under the current terms of the debt which require payment of $161 per month beginning in Year 2 of the Plan and continue thereafter for 360 months.

**Priority Claims:**

Door County Treasurer. The priority claim in the amount of $27,274 is based on past due real estate taxes. This claim will be repaid in two installments, including interest at the rate of 12%, as follows:

| | |
|---|---|
| December 1st 2021 | $ 17,420 |
| December 1st 2022 | $ 14,702 |
| | $ 32,122 |

**Unsecured Creditors:**

These claims total $ 4,250. Unsecured creditors will receive annual payments on November 30th each year over the 5 years of the Plan in the amount of $ 960 without interest.